**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NORTH DAKOTA**
**SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| Gregory W. Wilhelm, | ) | |
| | ) | **ORDER GRANTING, IN PART,** |
| Plaintiff, | ) | **DEFENDANTS' MOTION FOR** |
| | ) | **SUMMARY JUDGMENT** |
| vs. | ) | |
| | ) | |
| Credico Inc., et al., | ) | Case No. 1:05-cv-002 |
| | ) | |
| Defendants. | ) | |

Before the Court is the Defendants', Credico Inc., d/b/a Credit Collection Bureau, Debbie Akovenko, and John Does 1-10 (hereinafter collectively referred to as "Credico") Motion for Summary Judgment, filed on December 30, 2005. For the reasons set forth below, the defendants' motion is granted in part.

I.     **BACKGROUND**

This dispute arises out of an alleged violation of the Fair Debt Collection Practices Act. The plaintiff, Gregory W. Wilhelm, owed a debt on a credit card account. Wilhelm asserts that all of the charges made to the credit card were for personal, family, or household use. Through various transactions, Wachovia Bank sold Wilhelm's credit card account to Fourscore Resource Capital, L.L.C. Fourscore assigned the debt to Pinnacle Financial Services for collection. Pinnacle, in turn assigned the debt to the defendant, Credico Inc., to collect on behalf of Pinnacle.[1]

Wilhelm asserts that the balance after his last payment, on December 9, 1998, was $1,983.47 and that the interest rate was 19.55% APR. In a letter dated December 10, 2003, from Credico,

---

[1]On February 13, 2006, Chief Magistrate Judge Karen K. Klein granted Wilhelm's Motion to Amend Complaint to include Pinnacle as a defendant.

Wilhelm was notified of Credico's intent to sue him for the outstanding debt of $8,808.20. See Docket No. 1, Exhibit GWW-01. Wilhelm asserts that in order for his debt of nearly $2000.00 to grow to nearly $9,000.00 over five years, Credico must have assessed compound interest.

Wilhelm filed suit on December 9, 2004, in North Dakota state district court, and Credico removed the action on January 4, 2005. Wilhelm alleges that Credico violated the Fair Debt Collection Practices Act by (1) sending a "lawsuit threat letter" with no intention to pursue a lawsuit; (2) collecting interest on interest in violation of N.D.C.C. § 47-14-09(1); (3) falsely representing the character, amount, or legal state of the debt (also referred to as improperly "re-aging" the alleged debt); and (4) failing to report to Pinnacle that Wilhelm disputed the alleged debt.[2] Wilhelm seeks the statutory maximum of damages and actual damages including lost income from denied opportunities to serve as an agent for insurance companies.

## II.   LEGAL DISCUSSION

### A.   STANDARD OF REVIEW

It is well-established that summary judgment is appropriate when, viewed in a light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Graning v. Sherburne County, 172 F.3d 611, 614 (8th Cir. 1999). A fact is "material" if it might affect the outcome of the case and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

_____

[2]In the amended complaint, Wilhelm also alleges that Pinnacle violated the Fair Debt Collection Practices Act by continuing to report the debt to consumer reporting agencies until as late as March 2005, without reporting that the debt was disputed.

The basic inquiry for purposes of summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.  Quick v. Donaldson Co., Inc., 90 F.3d 1372, 1376 (8th Cir. 1996). The moving party has the initial burden of demonstrating to the Court that there are no genuine issues of material fact.  If the moving party has met this burden, the non-moving party cannot simply rest on the mere denials or allegations in the pleadings.  Instead, the non-moving party must set forth specific facts showing that there are genuine issues for trial. Fed.R.Civ.P. 56(e).  A mere trace of evidence supporting the non-movant's position is insufficient.  Instead, the facts must generate evidence from which a jury could reasonably find for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

### B.      DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Credico asserts it is entitled to summary judgment for three separate reasons:  (1) Wilhelm's claims are moot since Credico served a Rule 68 Offer of Judgment which offered him the entire amount of relief to which he would otherwise have been entitled; (2) the undisputed evidence in the record establishes that Credico intended to sue Wilhelm when it sent its notice of lawsuit letter; and (3) any attempt to collect interest on interest was the result of a bona fide clerical error and not actionable under the Fair Debt Collection Practices Act.

Wilhelm responds by contending that the Rule 68 Offer of Judgment is not admissible for purposes of a summary judgment motion and that Credico has ignored his request for actual damages.  Wilhelm also contends that the issue of whether Credico intended to sue him is a genuine

issue of material fact that should be decided by a jury.  Finally, Wilhelm contends that Credico is

not entitled to a bona fide error defense.

### 1)        RULE 68 OFFER OF JUDGMENT

Rule 68 of the Federal Rules of Civil Procedure, provides, in part, as follows:

> At any time more than 10 days before the trial begins, a party defending
> against a claim may serve upon the adverse party an offer to allow judgment to be
> taken against the defending party for the money or property or to the effect specified
> in the offer, with costs then accrued.  . . . An offer not accepted shall be deemed
> withdrawn and evidence thereof is not admissible except in a proceeding to
> determine costs. . . .

Fed. R. Civ. P. 68.  Some courts have held that a Rule 68 Offer of Judgment that encompasses all

of the damages sought renders a case moot and divests the district court of subject matter

jurisdiction.  See e.g., Carroll v. United Compuced Collections, Inc., 399 F.3d 620, 623 (6th Cir.

2005); Rand v. Mosanto, 926 F.2d 596 (7th Cir. 1991); Zimmerman v. Bell, 800 F.2d 386, 390 (4th

Cir. 1986).  The Eighth Circuit Court of Appeals has not addressed whether a Rule 68 offer can

render a case moot.

The Fair Debt Collection Practices Act provides that an individual may recover any actual

damages sustained and additional damages, not to exceed $1,000.00, for a violation of the act.  15

U.S.C. §§ 1692k(a)(1), (a)(2)(A).  In the complaint, Wilhelm sought  damages of "at least the

statutory damages allowed under FDCPA, and at least $50,000.00.  This includes lost income from

denied opportunities to serve as an agent for insurance companies." See Amended Complaint, ¶ IV

(Docket No. 45).  On January 6, 2005, the Defendants served a Rule 68 Offer of Judgment on

Plaintiff, offering $1,001 plus reasonable attorneys' fees and costs as agreed by the parties or as

determined by the Court upon motion.  See Docket No. 27, Exhibit A.

Credico asserts that because it made an offer to satisfy Wilhelm's entire demand plus costs and attorneys' fees, Wilhelm's case has become moot and the Court no longer has jurisdiction over the matter. Wilhelm contends that the offer did not satisfy his demand for actual damages, and therefore, cannot render the entire case moot. Credico acknowledges that the Rule 68 Offer of Judgment did not include the claim for actual damages, but Credico argues that Wilhelm's claim for actual damages is not valid.

The Court finds it unnecessary to reach the question of whether a Rule 68 Offer of Judgment can render a case moot because it is clear that the Rule 68 offer put forth by Credico did not include the actual damages claimed by Wilhelm. Under the Fair Debt Collection Practices Act, an individual may seek both statutory _and_ actual damages. While the Rule 68 offer undoubtedly offered the maximum amount of statutory damages, attorney fees, and costs Wilhelm could receive, the offer did not include the amount of actual damages Wilhelm sought. Regardless of whether the Eighth Circuit would recognize that a Rule 68 offer could render a case moot, the offer made by Credico simply did not offer Wilhelm all the relief available to him. As a result, the Court expressly finds that the Rule 68 Offer of Judgment did not render the case moot.

> 2)   **NOTICE OF LAWSUIT LETTER**

On December 10, 2003, Credico sent a "Notice of Lawsuit" letter to Wilhelm. See Docket No. 1, Exhibit GWW-01. The letter stated, in part, as follows:

> YOU WILL BE SUED – UNLESS YOU MAKE ARRANGEMENTS TO PAY YOUR BILL. THIS LETTER IS NO IDLE THREAT – THE PAPERWORK HAS BEEN ORDERED TO BEGIN A LAWSUIT AGAINST YOU. WE ONLY SEND THIS LETTER TO PEOPLE WE INTEND TO SUE!

MAKE PAYMENTS – YOU CAN PROPOSE TO US A PAYMENT PLAN ON THE ENCLOSED PAYMENT APPLICATION – OR CALL OUR OFFICE AND DISCUSS A PAYMENT PLAN WITH THE COLLECTOR HANDLING YOUR ACCOUNT.

THINK ABOUT IT – PLEASE CONSIDER A PAYMENT PLAN OR A WAGE ASSIGNMENT AS AN ALTERNATIVE TO THIS LAWSUIT.   AN INFORMATION SHEET IS ENCLOSED DESCRIBING THE CONSEQUENCE OF A JUDGMENT, WHICH IS WHAT THE COURT WILL AWARD US WHEN/IF WE ARE SUCCESSFUL IN OUR LAWSUIT.  YOU MAY ALSO WANT TO CALL AN ATTORNEY TO DISCUSS YOUR SITUATION AND YOUR OPTIONS.

LAST CHANCE – TO AVOID A LAWSUIT . . . . . RETURN THE COMPLETED PAYMENT APPLICATION (FILL IN ALL THE BLANKS) AND YOUR DOWN PAYMENT. - OR - THE WAGE ASSIGNMENT SIGNED BY YOURSELF AND YOUR EMPLOYER.  NOW IS THE TIME TO ACT.

THIS IS AN ATTEMPT TO COLLECT A DEBT, ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Docket No. 1, Exhibit GWW-01.  On December 10, 2003, Wilhelm then sent a letter to Credico disputing the debt.[3]  See Affidavit of Duane Reiswig, Exhibit C.  (Docket No. 39).

According to Duane Reiswig, President and CEO of Credico, it is Credico's policy to send "Notice of Lawsuit" letters only when it intends to sue the debtor.  See Affidavit of Duane Reiswig, p. 3.  (Docket No. 28).  After a "Notice of Lawsuit" letter is sent, circumstances may develop so that Credico does not follow through with the lawsuit, such as a debtor filing bankruptcy, making full payment, making arrangements for partial payment, or moving to another state.  See Affidavit of Duane Reiswig, p. 3.  (Docket No. 28).  Credico asserts that it declined to go forward with a lawsuit against Wilhelm once he sent a letter disputing and requesting validation of the debt.  Credico

---

[3]Wilhelm's letter is dated December 10, 2003, the same date as the Credico letter.  However, Wilhelm's letter refers to a letter from Credico dated November 10, 2003.  It is unclear whether Credico sent more than one "Notice of Lawsuit" letter to Wilhelm.

asserts that once it received a dispute letter from Wilhelm it could legally stop all collection efforts.[4]

Wilhelm responds by asserting that Reiswig's affidavit lacks credibility. However, Wilhelm has failed to offer any evidence to rebut the affidavit. Wilhelm also requests an opportunity to pursue additional discovery pursuant to Rule 56(f). Finally, Wilhelm asserts that because intent is a key element of determining whether Credico's "Notice of Lawsuit" letter violated the FDCPA, a genuine issue of material facts exists.

As for Wilhelm's request for additional discovery, Rule 56(f) provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f). A party invoking Rule 56(f)'s protection must do so in good faith by affirmatively demonstrating (1) why he cannot respond to a movant's affidavit and (2) how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's motion. <u>Janis v. Biesheuvel</u>, 428 F.3d 795, 801 (8th Cir. 2005). The Court finds that

---

[4]In answers to interrogatories posed by Wilhelm, Credico provided a "printout of the debtor account as maintained on the CUBS system." <u>See</u> Docket No. 23, Exhibit GWW-03, p. 7, 10-11. The cryptic printout includes the following entries, which apparently memorialize Credico's receipt of a dispute letter sent by Wilhelm:

| 11:19 | 12-12-03 | CORR REC'D FROM DEBTOR: |LTA WB/DJ REQUESTING VALIDATION OF DEBT - SENT TO COLL - ORDERED ALL MEDIA FROM CL ON THEIR WEBSITE |
| 09:56 | 12-15-03 | RECD DISPUTE LET FROM DEBTOR | DA WANTING ALL INFO ON ACCT WHICH DH ORDERED |
| 09:57 | 12-15-03 | +++ THIS ACCOUNT IS DISPUTED +++||DA |
| 09:57 | 12-15-03 | DO NOT CONTACT UNTIL INFO RECD |DA FROM CLIENT |

<u>See</u> Docket No. 23, Exhibit GWW-03, p. 10-11.

Wilhelm has failed to state why he could not present such evidence at the time of his response, and the Court denies Wilhelm's request for additional discovery pursuant to Rule 56(f).

Sections 1692e(4) and (5) of the Fair Debt Collection Practices Act provide that debt collectors cannot threaten to take action which they do not intend to take.  15 U.S.C. § 1692e(4), (5). Section 1692g(b) provides:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer request the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtain verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(b) (emphasis added); see Richmond v. Higgins, 435 F.3d 825, 829 (8th Cir. 2006).  It is well-established that once a debt collector receives a request for a validation report, the debt collector may voluntarily cease all collection efforts instead of providing the validation report. See Jang v. A.M. Miller & Assocs., 122 F.3d 480, 483 (7th Cir. 1997); Smith v. Transworld Sys., Inc., 953 F.2d 1025, 1031 (6th Cir. 1992).

The Court finds that Wilhelm has failed to set forth a genuine issue of material fact as to his assertion that Credico did not intend to sue him when it sent the "Notice of Lawsuit" letter.  It is well-established that a party opposing a motion for summary judgment may not rest upon the mere allegations or denials of the adverse party's pleading, but that party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. Rule 56(e).  Wilhlem has failed to set forth any specific facts showing that Credico did not intend to sue him when it sent the "Notice of Lawsuit" letter on or about December 10, 2003.  The undisputed evidence reveals that Credico sends "Notice of Lawsuit" letters to only those debtors it

8

intends to sue.  Further, Wilhelm cannot point to the fact that Credico's ultimately declined to sue

him as evidence of Credico's intent.  Wilhem's dispute letter of December 10, 2003, obligated

Credico to stop all attempts to collect Wilhelm's debt until it provided a validation report on the

debt.  The Court finds that Wilhelm has failed to set forth a genuine issue of material fact as to the

"intent to sue" issue.


### 3)    *BONA FIDE* ERROR DEFENSE

Finally, Credico asserts that any attempt by it to collect interest on interest as alleged by

Wilhlem was a bona fide error and not actionable under the FDCPA.  According to Credico's

President and CEO, Duane Reiswig, Credico has policies and procedures in place to accurately list

accounts for collection.  See Affidavit of Duane Reiswig, p.1 (Docket No. 39).  Credico's policy

states:

> PINNACLE:  . . . When listing Pinnacle accounts you need to do the following:  In
> notes in this order you need to put the Credit Car Number in line one, name of the
> bank goes on line two, the Client Principle in line three and the Client interest in line
> four. . . .

See Affidavit of Duane Reiswig, Exhibit A (Docket No. 39).  According to Reiswig:

> A clerical error occurred with the listing involving Plaintiff Wilhelm; the person who
> was responsible for setting up the new accounts (who is no longer employed with
> Credit Collections Bureau) mistakenly failed to break out the assigned principal and
> assigned interest on the spreadsheet.  As a consequence of this input error, both the
> principal and interest amounts for approximately 120 North Dakota accounts
> inadvertently had interest applied to them.  This mistake was caught and fixed in
> December 2003, approximately one month after the listing.  Between December 15
> and 16, 2003, all the accounts listed by Pinnacle on November 6, 2003 (the involved
> accounts) were adjusted accordingly.  No debtor paid any interest to Credit
> Collections Bureau pursuant to the error which was rectified.

See Affidavit of Duane Reiswig, p. 2 (Docket No. 28).

Wilhelm responds by contending that Credico violated the FDCPA by attempting to collect compound interest in violation of Section 47-14-09(1) North Dakota Century Code.  Wilhelm contends that Credico is not entitled to the bona fide error defense because Credico's policies are not reasonably adapted to avoid such errors, and that Credico's unknown employee routinely applied the wrong interest calculation method.

It is well-established that North Dakota law does not permit a creditor to collect compound interest.  N.D.C.C. § 47-14-09(1).  It is also undisputed that the manner in which Credico initially calculated the interest applicable to the Pinnacle accounts posted on November 6, 2003, resulted in the attempted collection of interest upon interest.  Thus, there is no question Credico violated the FDCPA.  However, the matter does not end here.  The Court must next determine whether a genuine issue of material fact exists as to Credico's alleged bona fide error defense.

The bona fide error defense exists as an exception to the strict liability imposed upon debt collectors by the FDCPA.  Picht v. Hawks, 236 F.3d 446, 451 (8th Cir. 2001).  Section 1692k(c) of the FDCPA provides:

> A debt collector  may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c).  The Eighth Circuit has addressed the bona fide error defense in the context of a mistake in legal judgment but has not addressed the defense as it relates to clerical or procedural errors.  See Picht v. Hawks, 236 F.3d 446, 451-52 (8th Cir. 2001); Hulshizer v. Global Credit Servs, Inc., 728 F.2d 1037, 1038 (8th Cir. 1984).

Those courts that have addressed the bona fide error defense as it applies to clerical or procedural errors have generally held that the defendant seeking the protection of the defense must

show that the violation was (1) unintentional; (2) a bona fide error, and (3) made despite the maintenance of procedures reasonably adapted to avoid the error.  Johnson v. Riddle, No. 04-4036, 2006 WL 856211, *4 (10th Cir. April 4, 2006); see also Turner v. J.V.D.B. & Assoc., Inc., 330 F.3d 991, 995 (7th Cir. 2003) (holding a defendant can avoid liability by proving (1) the violation was unintentional, resulting frm a bona fide error, and (2) that error occurred not-withstanding the maintenance of procedures reasonably adapted to avoid any such error).  "A defendant pleading the affirmative defense of bona fide error need only show that it did not intend to violate the statute, not that it intentionally took the actions constituting violations.  Bynum v. Cavalry Portrolio Servs., L.L.C., No. 04-CV-0515-CVE-PJC, 2006 WL 850935, *4 (N.D. Okla. Mar. 30, 2006).  "For an error on the part of a debt collector defendant to be 'bona fide,' it must be made in good faith, inadvertently, without fraud or deceit, and with faithfulness to one's duty or obligation."  Bynum v. Cavalry Portrolio Servs., L.L.C., No. 04-CV-0515-CVE-PJC, 2006 WL 850935, *4 (N.D. Okla. Mar. 30, 2006).  "A bona fide error is an error made in good faith; a genuine mistake, as opposed to a contrived mistake."  Ross v. RJM Actuisitions Funding, LLC, No. 04 C 6557, 2006 WL 752953, *6 (N.D. Ill. Mar. 16, 2006) (internal quotations omitted).  "The bona fide error defense does not require debt collectors to take every conceivable precaution to avoid errors; rather, it only requires reasonably precaution."  Ross v. RJM Actuisitions Funding, LLC, No. 04 C 6557, 2006 WL 752953, *7 (N.D. Ill. Mar. 16, 2006).  "The purpose of the bona fide error defense is to protect debt collectors from inadvertent clerical errors" such as the miscoding of data into a computer system.  Danielson v. Hicks, Civ. No. 3-94-1053, 1995 WL 767290, *3 (D. Minn. Oct. 26, 1995)(unreported).

The undisputed evidence establishes that the error made in the posting of the Wilhelm account was an inadvertent clerical error.  The affidavits of Reiswig and the Credico policy setting

forth the procedure for posting the Pinacle accounts, show that the principle and interest were to be separately entered into Credico's records.  Wilhelm has failed to provide any affidavits, deposition testimony, or any other specific facts to refute Credico's affidavits and attached exhibits.  It is clear from the record that Wilhelm's assertions that Credico is not entitled to the bona fide error defense rest on pure speculation.  <u>See</u> Docket No. 42, p. 10 ("Admittedly this is <u>speculation</u>, but Wilhelm surmises that the redactions shown as bold-faced in the quoted material [Credico's policy for posting Pinaclue accounts] may well provide us the clues we need to get to the bottom of the interest compounding issue.  It is quite <u>possible</u> that Credico's scheme was to collect enough from the consumer so that Credico's commission could be paid and its client could still recover the amount it claimed it had coming.") (emphasis added).

It is well-established that a plaintiff's failure to submit any affidavits or deposition testimony to refute the defendant's  affidavits of employees and an instruction manual is grounds to grant a motion for summary judgment.  <u>See</u> <u>Smith v. Transworld Systems, Inc.</u>, 953 F.2d 1025, 1031 (6th Cir. 1992); <u>see also</u> <u>Ross v. RJM Acquisitions Funding, LLC</u>, No. 04 C 6557, 2006 WL 752953, *8 (N.D. Ill. Mar. 16, 2006); <u>Bible v. Allied Interstate, Inc.</u>, No. 00-323-DWF/RLE, 2001 WL 1618494, *3 (D. Minn. May 14, 2001)(unreported).  The Court finds that the error by Credico in posting the Pinacle accounts was an unintentional, bona fide clerical error, and that the error was made despite Credico's procedures which were reasonably adapted to avoid the error.  The Court further finds that there are no genuine issues of material fact as to the bona fide error defense and that Credico has established that it is entitled to the bona fide error defense.  There have been no specific facts or evidence presented to refute the affidavits submitted by Credico which establish that the posting error was made in good faith and was a genuine clerical error.

4)        **REPORTING THE DISPUTED DEBT**

The only remaining claim as to Credico arises out of Wilhelm's assertion that Credico failed to report to Pinnacle that Wilhelm disputed the alleged debt.  Wilhelm contends that Credico's failure to report to Pinnacle that he was disputing the debt lead to Pinnacle's erroneous report to a credit reporting agency.

Credico asserts that it did not report Wilhelm's debt to any credit reporting agency at any time.  Credico relies on the affidavit of David Hall, a Credico employee, which states:

> On December 12, 2003 Credico received a request for verification and dispute from Plaintiff Gregory Wilhelm.  This request and dispute were logged into Credico's system and I personally transmitted this same information to Pinnacle Credit Services (Pinnacle) alerting them to the request and dispute.  I did so immediately upon my receipt of Plaintiff Wilhelm's letter on December 12, 2003.

See Affidavit of David Hall (Docket No. 16).

Given the procedural posture of this case, the Court finds that it is premature to rule on this claim.  Wilhelm was granted leave to amend his complaint to include Pinnacle as a defendant after the motion for summary judgment was filed.  See Docket No. 44.  At this point, Wilhelm has not had an opportunity to conduct discovery as it relates to Pinnacle, and Pinnacle has not had an opportunity to address Wilhelm's assertion that it erroneously reported a disputed debt to a credit reporting agency.  The Court finds that the prudent course of action at this stage is to deny Credico's motion for summary judgment as to the allegations concerning a failure to report a disputed debt to Pinnacle.  Once additional discovery has been conducted, Credico may have an opportunity to renew its motion as to this sole remaining claim.

13

## II.    **CONCLUSION**

The Court **GRANTS**, in part, the Defendants' Motion for Summary Judgment.  (Docket No. 32).  The only claim remaining as to Credico is the allegation that it failed to report to Pinnacle that Wilhelm disputed the debt.  The Court **DENIES AS MOOT** the Plaintiff's Motion for Partial Summary Judgment (Docket No. 29).

In addition, the Court **DENIES AS MOOT** the Plaintiff's Motion for Class Certification (Docket No. 21).  The amended complaint requests class action status for those "consumers who have received letters similar to the Lawsuit Threat Letter and who were not sued by Debt Collectors."  <u>See</u> Amended Complaint, ¶ 17. (Docket No. 45).  The amended complaint does not request class action status as to the claim against Credico for failure to report a disputed debt to Pinnacle and against Pinnacle for reporting a disputed debt to a credit reporting agency.  Because the Court has granted summary judgment in favor of Credico on the claims relating to the "Notice of Lawsuit" letter, the Court finds that the request for class action status is moot.

**IT IS SO ORDERED.**

Dated this 12th day of April, 2006.


        /s/ Daniel L. Hovland
        Daniel L. Hovland, Chief Judge
        United States District Court

14